UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:23-cr-00004-JMS-CMM-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| KERRI MILLER | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cr-00004-JMS-CMM |
| | ) | |
| KERRI MILLER, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Kerri Miller (01) has filed a *pro se* motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). [Filing No. 148.] For the reasons explained below, her motion is **DENIED**.

**I.**
**BACKGROUND**

On October 31, 2023, Ms. Miller pled guilty to one count of Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Filing No. 85.] The offense conduct is summarized as follows:

> In August 2022, Postal Inspectors intercepted three packages shipped to the defendant from Phoenix, Arizona. The packages were addressed to the defendant at her home address in Terre Haute, Indiana…. All three packages contained methamphetamine. Specifically, the first package, which was intercepted on August 8, 2022, contained approximately 910.5 grams of a mixture containing methamphetamine. The second package, which was intercepted on August 18, 2022, contained approximately 913.6 grams of a mixture containing methamphetamine. The third package, which was also intercepted on August 18, 2022, contained 848 grams of 100% pure methamphetamine hydrochloride.
>
> The defendant used her cellular phone to track all three packages and when the first package, which was intercepted on August 8, 2022, did not arrive at the defendant's residence, the defendant called the United States Postal Service (USPS) customer service line to inquire about the package's location. The defendant provided her home address, email address, and telephone number to the customer service

1

> representative and falsely claimed that the missing package contained "quartz crystals" worth approximately $2,000.
>
> Also in August 2022, the defendant text messaged co-defendant Jason Weir and requested that [he] pick up a package of U.S. currency to mail to co-defendant Kevin MacConkey. In those text messages, the defendant provided her own name and home address, as well as MacConkey's name and home address. Weir responded by sending the defendant photographs of the parcels.
>
> In September 2022, after the three packages of methamphetamine described above were intercepted, the defendant took three separate trips to Phoenix, Arizona, in which the defendant flew to Phoenix, remained in Phoenix for a brief period of time, and then either drove or took a train back to Terre Haute, Indiana.
>
> In October 2022, the Court signed an order authorizing the initial interception of wire communications to and from the defendant's cell phone. Calls intercepted over the defendant's cell phone confirmed the defendant's receipt (and attempted receipt) of methamphetamine from an Arizona-based source of supply. For example, on November 1, 2022, at approximately 1:01 p.m., the defendant called Weir to discuss the missing USPS packages. The defendant and Weir also discussed picking up a box from "Tina" and paying "Tina" to receive ("catch") the box for them. Weir ultimately agreed to pick up the box from "Tina," pay "Tina," and deliver the box to the defendant. Later in the day of November 1, Weir arrived at the defendant's residence with a large cardboard box on his shoulder, which is believed to be the box that Weir picked up from "Tina."

[Filing No. 71 at 4-5.] The investigation revealed conversations between Ms. Miller and other individuals regarding traveling to Phoenix and purchasing and distributing methamphetamine and marijuana. [Filing No. 71 at 5-6.] On December 15, 2022, Ms. Miller was stopped in Indiana on her way back from St. Louis, Missouri with approximately 896.8 grams of a mixture containing methamphetamine. [Filing No. 71 at 6.] The approximate amount of drugs involved in the conspiracy and attributable to Ms. Miller was 5,242 grams of actual methamphetamine, 2,720 grams of a mixture or substance containing methamphetamine, 453 grams of psilocybin mushrooms, and 2,720.96 grams of marijuana. [Filing No. 71 at 6.]

Ms. Miller faced a guideline range of 188 to 235 months. [Filing No. 71 at 22.] The Court sentenced her to 96 months of imprisonment followed by 3 years of supervised release. [Filing

2

No. 87.] The Bureau of Prisons ("BOP") currently reports Ms. Miller's anticipated release date (with good-conduct time included) as April 11, 2028. https://www.bop.gov/inmateloc/ (last visited April 10, 2025).

Ms. Miller filed a Motion for Reduction of Sentence on October 21, 2024. [Filing No. 148.] She argues that she establishes extraordinary and compelling reasons for compassionate release because: (1) her sentence reflects a sentencing disparity because it was determined using actual methamphetamine guidelines; and (2) her behavior while in prison indicates that she would not be a danger to the community. [Filing No. 148.] The Government opposes the motion, [Filing No. 152], and Ms. Miller did not file a reply by the deadline and has not done so to date. The motion is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

The Sentencing Commission has set forth the following considerations when evaluating a request for compassionate release: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2). If a court finds that extraordinary and compelling reasons exists and that the defendant is not a danger to the safety of

3

any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable." U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

### A.     Actual Methamphetamine Sentencing Disparity

Ms. Miller argues in support of her Motion for Compassionate Release that her sentence is unusually long, which constitutes an extraordinary and compelling reason for release under the "catch all" provision of U.S.S.G. § 1B1.13. [Filing No. 148 at 13.] She asserts that the United States Sentencing Commission "uses drug purity as a proxy for a defendant's culpability" and points to cases in which courts "reject[ed] or var[ied] categorically from the crack cocaine guidelines." [Filing No. 148 at 1-4.] She asserts that the Court "deemed the meth possessed as especially pure, actual meth [and] the guidelines indicate that she should have a base offense level of 38…. In contrast, if [she] was deemed to have possessed [a] meth mixture the guidelines indicate that her base offense level would be at 36." [Filing No. 148 at 5-6 (emphasis omitted).] She requests that the Court reduce her sentence "based on reasons due to actual meth vs meth mixture" and that the Court "reject the purity level distinction in sentence reduction because the

4

facts of all credible data gathered since the time the Sentencing Commission promulgated the rules and related policy statements demonstrate that purity level of meth is not indic[a]tive of [her] culpability." [Filing No. 148 at 6.]

In its response, the Government notes that Ms. Miller does not argue that the Court calculated her guidelines range in error or that the guidelines have changed since her sentencing. [Filing No. 152 at 3.] It asserts that U.S.S.G. § 1B1.13(b)(5)'s catchall provision does not provide relief for changes in the law or sentencing disparities, and that § 1B1.13(b)(6) specifically addresses those circumstances but does not apply to Ms. Miller because she has not served more than ten years of imprisonment. [Filing No. 152 at 3-4.] The Government notes that there has been no change in the law that applies to Ms. Miller's case, let alone one that would produce a sentencing disparity, and that Ms. Miller relies on cases that predate her sentencing and that she could have raised at her sentencing but did not. [Filing No. 152 at 4-5.] It also points out that the Court sentenced Ms. Miller to below the guidelines range and the mandatory minimum sentence "by a significant margin." [Filing No. 52 at 6.] Finally, the Government contends that a motion for compassionate release is not the proper avenue for challenging a sentence's reasonableness, which must be done through a motion brought under 28 U.S.C. § 2255. [Filing No. 152 at 7-8.]

Ms. Miller relies on the "catchall" provision in U.S.S.G. § 1B1.13(b)(5). [*See* Filing No. 148 at 13.] Section 1B1.13(b)(5) provides that extraordinary and compelling reasons for compassionate release exist when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [relating to the defendant's medical condition, age, family circumstances, and whether she was a victim of abuse], are similar in gravity to those described in

5

paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Section 1B1.13(b)(6) specifically addresses an unusually long sentence – the ground that Ms. Miller relies on here – and states:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law…may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Although Ms. Miller attempts to characterize her extraordinary and compelling reason as brought under § 1B1.13(b)(5)'s catchall provision, to allow her to proceed under that subsection would provide an end-run around § 1B1.13(b)(6)'s requirement that in order to receive compassionate release for an unusually long sentence, a defendant must have already served at least 10 years of her term of imprisonment. *See* U.S.S.G. § 1B1.13(b)(6). Ms. Miller has not done so – indeed, she was only sentenced to 96 months – and she cannot seek compassionate release for an unusually long sentence under § 1B1.13(b)(5)'s catchall provision. Further, § 1B1.13(c) specifically requires that changes in the law may only be considered in a determination as to whether the defendant meets the requirements of § 1B1.13(b)(6). Moreover, Ms. Miller does not point to a change in the law that indicates that her sentence is unusually long or that would lead to a different guidelines calculation.[1] Her argument that she is serving an unusually long sentence is

---

[1] The Court notes that Ms. Miller's argument comparing actual to mixture is seriously undermined by the large quantity of methamphetamine and other controlled substances that she possessed. Specifically, even if the Court considered the 5,242 grams of actual methamphetamine to be 5,242 grams of a mixture or substance containing a detectable amount of methamphetamine, the mandatory minimum sentence would be the same. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The Court acknowledges her guidelines would have changed, and that the Court had discretion and did sentence her below the statutory mandatory minimum, but the quantity of controlled substances remains significant.

not an extraordinary and compelling reason for compassionate release, whether considered alone or in conjunction with any other reason. [2] Ultimately it will be for Congress or the U.S. Sentencing Commission to determine whether the actual vs. mixture distinction should be ameliorated or abolished.

### B.    Behavior While Incarcerated

Ms. Miller argues that her behavior while incarcerated is another extraordinary and compelling reason warranting compassionate release, noting that "[t]he BOP itself has determined she is not a danger" and that her rehabilitation can be considered in connection with other reasons. [Filing No. 148 at 12.]

The Government responds that Ms. Miller's rehabilitation efforts do not constitute an extraordinary and compelling reason for compassionate release. [Filing No. 152 at 8-9.]

While it is commendable that Ms. Miller has engaged in good behavior and programming while in prison, rehabilitation and good behavior, no matter how exceptional, cannot be extraordinary and compelling reasons to reduce her sentence. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d) (Nov. 2023); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) ("We cannot read § 3582(c) to permit good prison conduct and rehabilitation alone to override Congress's determinate sentencing scheme."). The Court does not find Ms. Miller's good behavior and rehabilitation while incarcerated, whether considered alone or in conjunction with any other reason, to be an extraordinary and compelling reason to grant her compassionate release.

---

[2] Additionally, Ms. Miller cannot use a motion for compassionate release to challenge the reasonableness of her sentence. *See United States v. Colon*, 2024 WL 3983324, at *1 (7th Cir. Aug. 29, 2024) (sentencing challenges may not be brought through a motion for compassionate release); *United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021) (defendant "cannot use a motion for compassionate release to challenge a potential error…in [her] sentence").

7

The Court, in its discretion, finds that Ms. Miller has not carried her burden to show that there are extraordinary and compelling reasons for her release, whether considered alone or in conjunction with any other reason. In any event, even if the Court found that extraordinary and compelling reasons exist, it also finds that Ms. Miller is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Ms. Miller was responsible for a very large quantity of drugs – 5,242 grams of actual methamphetamine, 2,720 grams of a mixture or substances containing methamphetamine, 453 grams of psilocybin mushrooms, and 2,720.96 grams of marijuana. [Filing No. 71 at 6.] These drugs – particularly methamphetamine – are dangerous to the public. Ms. Miller engaged in numerous illegal drug transactions over the course of several months. [Filing No. 71 at 4-6.] She has also had several prior drug-related convictions. [Filing No. 71 at 13-14.] Given the short period of her incarceration, these circumstances indicate that Ms. Miller is a danger to the safety of any other person or to the community, making compassionate release unwarranted.

## III.
### CONCLUSION

For the reasons stated above, Ms. Miller's Motion for Reduction of Sentence, [148], is **DENIED**.

Date: 4/14/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

8

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Kerri Miller
#36537-510
FMC Carswell
Federal Medical Center
P.O. Box 27137
Fort Worth, TX 76127