UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

KERRI MILLER,                                    )
                                                 )
                    *Petitioner*,                )
                                                 )
            *vs*.                                 )        2:24-cv-00133-JMS-MG
                                                 )
UNITED STATES OF AMERICA,                        )
                                                 )
                    *Respondent*.                )

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255**

For the reasons explained in this Order, Petitioner Kerri Miller's Motion for Relief Pursuant

to 28 U.S.C. § 2255 must be **DENIED** and the action **DISMISSED WITH PREJUDICE**. In

addition, the Court finds that a certificate of appealability should not issue.

**I.**
**STANDARD OF REVIEW**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal

prisoner can challenge her conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343

(1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon

the ground that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was

in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28

U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as

an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred

which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79

1

(7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II.
### FACTS AND PROCEDURAL BACKGROUND

### A.    Criminal Proceedings

On February 22, 2023, Ms. Miller was charged with one count of Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of Possession with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii).  [Filing No. 17 in *United States v. Kerri Miller*, 2:23-cr-00004-JMS-CMM-1 (the "Criminal Case").]  The offense conduct is described in the Presentence Investigation Report ("PSR") as follows:

> In August 2022, Postal Inspectors intercepted three packages shipped to the defendant from Phoenix, Arizona.  The packages were addressed to the defendant at her home address in Terre Haute, Indiana….  All three packages contained methamphetamine.  Specifically, the first package, which was intercepted on August 8, 2022, contained approximately 910.5 grams of a mixture containing methamphetamine.  The second package, which was intercepted on August 18, 2022, contained approximately 913.6 grams of a mixture containing methamphetamine.  The third package, which was also intercepted on August 18, 2022, contained 848 grams of 100% pure methamphetamine hydrochloride.
>
> The defendant used her cellular phone to track all three packages and when the first package, which was intercepted on August 8, 2022, did not arrive at the defendant's residence, the defendant called the United States Postal Service (USPS) customer service line to inquire about the package's location.  The defendant provided her home address, email address, and telephone number to the customer service representative and falsely claimed that the missing package contained "quartz crystals" worth approximately $2,000.
>
> Also in August 2022, the defendant text messaged co-defendant Jason Weir and requested that Weir pick up a package of U.S. currency to mail to co-defendant Kevin MacConkey.  In those text messages, the defendant provided her own name and home address, as well as MacConkey's name and home address.  Weir responded by sending the defendant photographs of the parcels.

In September 2022, after the three packages of methamphetamine described above were intercepted, the defendant took three separate trips to Phoenix, Arizona, in which the defendant flew to Phoenix, remained in Phoenix for a brief period of time, and then either drove or took a train back to Terre Haute, Indiana.

In October 2022, the Court signed an order authorizing the initial interception of wire communications to and from the defendant's cell phone. Calls intercepted over the defendant's cell phone confirmed the defendant's receipt (and attempted receipt) of methamphetamine from an Arizona-based source of supply. For example, on November 1, 2022, at approximately 1:01 p.m., the defendant called Weir to discuss the missing USPS packages. The defendant and Weir also discussed picking up a box from "Tina" and paying "Tina" to receive ("catch") the box for them. Weir ultimately agreed to pick up the box from "Tina," pay "Tina," and deliver the box to the defendant. Later in the day of November 1, Weir arrived at the defendant's residence with a large cardboard box on his shoulder, which is believed to be the box that Weir picked up from "Tina."

[Filing No. 71 in the Criminal Case at 4-5.] The investigation revealed conversations between Ms. Miller and other individuals regarding traveling to Phoenix and purchasing and distributing methamphetamine and marijuana. [Filing No. 71 in the Criminal Case at 5-6.] On December 15, 2022, Ms. Miller was stopped in Indiana on her way back from St. Louis, Missouri with approximately 896.8 grams of a mixture containing methamphetamine. [Filing No. 71 in the Criminal Case at 6.] The approximate amount of drugs involved in the conspiracy and attributable to Ms. Miller was 5,242 grams of actual methamphetamine, 2,720 grams of a mixture or substance containing methamphetamine, 453 grams of psilocybin mushrooms, and 2,720.96 grams of marijuana. [Filing No. 71 in the Criminal Case at 6.]

On July 21, 2023, Ms. Miller, represented by Joseph Cleary, filed a Petition to Enter Plea of Guilty and Plea Agreement. [Filing No. 60 in the Criminal Case.] In the Plea Agreement, signed by Ms. Miller, she:

- Agreed to plead guilty to Count 1 (Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846) in exchange for the Government dismissing Count 2 (Possession with Intent to Distribute 500 Grams or More of a Mixture or

Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii));

- Agreed to the factual basis for the guilty plea, including that "[t]he approximate amount of drugs involved in the conspiracy and attributable to [her] by her own conduct, or by the conduct of other conspirators reasonably foreseeable to [her] are: (i) 5,242 grams of actual methamphetamine; (ii) 2,720 grams of a mixture or substance containing methamphetamine; (iii) 453 grams of psilocybin mushrooms; and (iv) 453 grams of marijuana";

- Agreed that her "base offense level pursuant to U.S.S.G. § 2D1.1(a)(5) and 2D1.1(c)(1) [was] 38, based on a converted drug weight of approximately 110,283 kilograms";

- Acknowledged that she had told her attorney the facts and surrounding circumstances concerning the matters in the Indictment;

- Acknowledged that she had read the entire Plea Agreement and discussed it with her attorney;

- Acknowledged that she understood all the terms of the Plea Agreement and that those terms correctly reflected the results of plea negotiations;

- Acknowledged that she was "fully satisfied with [her] attorney's representation during all phases of [the] case," and that her attorney had "done all that anyone could do to counsel and assist [her]"; and

- Acknowledged that she was "freely and voluntarily pleading guilty."

[Filing No. 60 in the Criminal Case at 1-18.]  In the Plea Agreement, Mr. Cleary certified that he had explained all of the accusations against Ms. Miller to her, believed each statement in the Petition to Enter Plea of Guilty and Plea Agreement was accurate and true, and believed that Ms. Miller's guilty plea "accord[ed] with [his] understanding of the facts as related to [him] by [Ms. Miller] and [was] consistent with [his] advice to [Ms. Miller]."  [Filing No. 60 in the Criminal Case at 19.]

The Court held a change of plea and sentencing hearing on October 31, 2023.  [Filing No. 85 in the Criminal Case.]  During the hearing, the following colloquy occurred after Ms. Miller was sworn:

THE COURT: Can you read and write well enough to have understood the charges that were filed against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: And the plea agreement that you signed, were you able to understand that document?

THE DEFENDANT: Yes, ma'am.

*  *  *

THE COURT: Do you think today you're suffering the effects of any mental health issues in such a way that it would interfere with your ability to understand what's happening?

THE DEFENDANT: No, ma'am.

THE COURT: All right. I also know you have had issues with substance abuse?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you suffering the effects of drug addiction in such a way today that it would interfere with your ability to understand what's happening?

THE DEFENDANT: No, ma'am.

THE COURT: Okay…. Are you under the influence of any drug, medication or other substance of any kind right now that might interfere with your ability to understand what's happening?

THE DEFENDANT: No, ma'am.

THE COURT: All right. If at any time you don't understand something today, you're free to ask me to clarify or if you prefer to speak privately with your lawyer; do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: When the case first began, did you receive a copy of the indictment that was filed against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: And have you fully discussed the charges and the case in general with Mr. Cleary, your attorney?

5

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Are you fully satisfied with the counsel, representation and advice Mr. Cleary has given you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Mr. Cleary, were all formal plea offers by the government conveyed to Ms. Miller?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Olivier, did Ms. Miller receive the benefit of the most lenient offer the government intended to make in this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Ms. Miller, did you have an opportunity to read and discuss the plea agreement with Mr. Cleary before you signed it?

THE DEFEDANT:  Yes, ma'am.

                    *              *              *

THE COURT:  Do you believe you understand the terms of the plea agreement?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  We'll go over it in just a minute.  And are you pleading guilty today of your own free will and because you are guilty?

THE DEFENDANT:  Yes, ma'am.

                    *              *              *

THE COURT:  Okay.  If we could turn then to paragraph 22, I need to make sure, before somebody pleads guilty, that there is evidence to support their plea of guilty. And in paragraph 22, there's a lengthy summary of certain facts that you have agreed that the government could prove.  It carries on all the way from the bottom of page 8 to the top of the page 13.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And did you carefully review each of these facts before you signed your plea agreement?

6

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And is the information contained in these paragraphs true?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  The Court therefore finds that a factual basis exists for the plea and that an independent record of the factual basis has been made.  You and the government have reached a stipulation – I'm on the bottom of page 13 now – concerning the guidelines in your case.  It is consistent with the calculation made by probation.  So let's go ahead and turn to the presentence report and we'll complete the guideline calculation at this time.  Page 7 is where the guideline calculation begins.  To determine your base offense level, we total all of the drugs that you were in possession of and we convert that under the guidelines to one sort of uniform type or consideration of drugs.  And because of the quantity of methamphetamine, actual methamphetamine mixture, marijuana, and psilocybin that you were – was reasonably attributed to your conduct in this case, the base offense level is 38.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

*          *          *

THE COURT:  All right.  So also, Ms. Miller, we have to do the second half of your guideline calculation and that's based on your criminal history.  There are a number of convictions that are so old or minor that there are not points assessed for them.  And in fact there are several pages of them.  But the first crime for which points are assessed is a 2013 conviction from November 2013 for unlawful possession with intent to deliver not more than 2,000 but greater than 500 grams of marijuana.  One point is assessed for that conviction.  Then again in paragraph – that's in paragraph 54.  In paragraph 55, there's a 60-month suspended sentence for possession of drug paraphernalia and possession of methamphetamine for which one point is assessed from Randolph County, Arkansas.  That would give you a total criminal history score of two and that places you in criminal history category two.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  So the worst day for you…is a level 35, criminal history category two.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  At that level, the guidelines call for the following:  A term of imprisonment of 188 to 235 months, supervised release of two to five years…; a

fine of between 40,000 and 10,000,000, and the $100 special assessment. That's the worst case scenario; do you understand?

THE DEFENDANT: Yes, ma'am.

*              *              *

THE COURT: It is the finding of the Court in the case of United States versus Kerri Miller, that the defendant is fully competent and capable of entering an informed plea, that she's aware of the nature of the charge and the consequences of the plea, that her plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted and the defendant is now adjudged guilty of Count I.

[Filing No. 142 in the Criminal Case at 4-30.]

The Court proceeded to the sentencing portion of the hearing and relied upon the PSR, which provided the following conversion of the drug quantities involved in the offense and used to calculate Ms. Miller's base offense level:

**Base Offense Level:** The guideline for a violation of 21 U.S.C. § 841(a)(1) is USSG §2D1.1. The base offense level is 38 because the defendant possessed 90,000 kilograms or more of converted drug weight (110,509.22 kilograms). USSG §2D1.1(a)(5) and (c)(1).

| Drug Name | Drug Quantity | Converted Drug Weight |
|---|---|---|
| Methamphetamine (actual) | 5,242.0 gm | 104,840.00 kg |
| Methamphetamine (mixture) | 2,720.0 gm | 5,440.00 kg |
| Marihuana | 2,720.96 gm | 2.72 kg |
| Psilocybin | 453.0 gm | 226.50 kg |
| **Total** | | 110,509.22 kg |

[Filing No. 71 in the Criminal Case at 7.]

As for her criminal history, Ms. Miller received one point for a 2013 conviction for Unlawful Possession with Intent to Deliver Marijuana and one point for 2017 convictions for

Possession of Drug Paraphernalia and Possession of Methamphetamine.  [Filing No. 71 in the Criminal Case at 13-15.]  Ultimately, Ms. Miller's total offense level was 31 with a criminal history category of II, resulting in a guideline range of 121 to 151 months.  [Filing No. 142 in the Criminal Case at 36.]

The Court considered the factors set forth in 18 U.S.C. § 3553(a) and noted that "the quantity of drugs involved in this case is considerably aggravating because it was a lot of drugs." [Filing No. 142 in the Criminal Case at 47.]  It noted that while Ms. Miller's criminal history was extensive, "it is sort of a textbook example of untreated mental illness and substance abuse or someone who's trying to treat her mental illness with controlled substances."  [Filing No. 142 in the Criminal Case at 47-48.]  The Court ultimately sentenced Ms. Miller to a below-guidelines term of 96 months' imprisonment, followed by three years of supervised release.  [Filing No. 87 in the Criminal Case at 2-3.]

### B.      2255 Proceedings

On April 15, 2024, Ms. Miller filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody in the Criminal Case, [Filing No. 117 in the Criminal Case], and the Court opened this case.  The Government filed a response to the § 2255 motion, [Filing No. 6], Ms. Miller did not file a reply, and the § 2255 motion is ripe for the Court's consideration.

### III.
#### DISCUSSION

In support of her § 2255 motion, Ms. Miller argues that: (1) Mr. Cleary was ineffective because she did not have a proper understanding of the drug amount conversions and there was a discrepancy with her criminal history points; and (2) the quantity of drugs involved in the offense

was incorrectly calculated.  [Filing No. 1 at 4-5.]  The Court considers Ms. Miller's arguments in turn.

### A. Ineffective Assistance of Counsel

A § 2255 movant claiming ineffective assistance of counsel bears the burden of showing that: (1) counsel's performance fell below objective standards for reasonably effective representation; and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021).  If a petitioner cannot establish one of the *Stickland* requirements, the Court need not consider the other.  *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).  To satisfy the first requirement of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of her counsel.  *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).  The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance.  *Id.*  On the prejudice requirement, a petitioner "must show that 'but for counsel's errors, there is a reasonable probability that the result would have been different.'" *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (quoting *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016)).  "In the context of a guilty plea, a petitioner demonstrates prejudice by 'showing that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial.'" *Perrone*, 889 F.3d at 908 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The Court considers whether Mr. Cleary was ineffective because Ms. Miller allegedly did not have a proper understanding of the drug amount conversions and due to an alleged discrepancy with her criminal history points.

1.    *Drug Amount Conversions*

In support of her § 2255 motion, Ms. Miller states that she "did not have [a] proper understanding of drug [conversions]," and that she "did not know/understand [her] rights." [Filing No. 1 at 4.]

In its response, the Government argues that Ms. Miller has waived any argument related to the drug amount conversions because her "one-sentence assertion lacks case or record citations" and "has no analysis." [Filing No. 6 at 13.] It argues that Mr. Cleary was not ineffective in any event because Ms. Miller acknowledged at the plea hearing that Mr. Cleary had read and discussed the plea with her, that she understood the PSR, the consequences of her plea, and the sentencing possibilities, and that the Court explained the drug amount conversions to her. [Filing No. 6 at 14-15.] It asserts that Ms. Miller does not argue that she suffered any prejudice, that the Court's discussion of the drug amount conversions "cured any potential deficient advice," and that she does not offer any evidence that she wanted to go to trial. [Filing No. 6 at 16-17.] The Government notes that "pleading guilty was clearly the best option" because Ms. Miller gained "dismissal of one count," along with various reductions and "a low-end guideline recommendation from the government, which resulted in a below-guidelines sentence. [Filing No. 6 at 17.]

Even if the Court finds that Mr. Cleary did not review the drug amount conversions with Ms. Miller, the record reflects that the Court did so and that Ms. Miller acknowledged that she understood the conversions. At the plea hearing, Ms. Miller stated that she understood the PSR and the Court went on to explain the drug amount conversions set forth in the PSR. [*See* Filing No. 142 in the Criminal Case at 4 ("THE COURT: How about the presentence report that probation prepared, were you able to understand it? THE DEFENDANT: Yes, ma'am."); Filing No. 142 in the Criminal Case at 16 ("THE COURT: Page 7 is where the guideline calculation begins. To

11

determine your base offense level, we total all of the drugs that you were in possession of and we convert that under the guidelines to one sort of uniform type or consideration of drugs.  And because of the quantity of methamphetamine, actual methamphetamine mixture, marijuana, and psilocybin that you were – was reasonably attributed to your conduct in this case, the base offense level is 38.  Do you understand?  THE DEFENDANT:  Yes, ma'am.").]  Ms. Miller's statements to the Court are given a "strong presumption of verity."  *United States v. Silva*, 122 F.3d 412, 415 (7th Cir. 1997) (quotation and citation omitted); *see also United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) ("Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard….[W]hen the judge credits the defendant's statements in open court, the game is over.").  In sum, even if Mr. Cleary had not thoroughly explained the drug amount conversions to Ms. Miller, she acknowledged her understanding of the conversions when the Court reviewed them with her.

Additionally, Ms. Miller does not identify which conversions she did not understand or how her failure to understand affected her willingness to plead guilty.  Because Ms. Miller has not developed her argument regarding the drug amount conversions, it is waived.  *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Normal-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Courts must "not upset a plea solely because of *post hoc* assertions from a defendant about how [she] would have pleaded but for [her] attorney's deficiencies."  *Lee v. United States*, 582 U.S. 357, 369 (2017).  Instead, they "look to contemporaneous evidence to substantiate a defendant's expressed preferences" and only allow a withdrawal if they are convinced that the defendant would have pleaded differently.  *Id.*  Significantly, Ms. Miller does not argue that she would not have pled

12

guilty if Mr. Clearly had more thoroughly explained the drug amount conversions. She has not shown that there was a reasonable probability that if Mr. Cleary had done so before the plea hearing, "[she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Even assuming that Ms. Miller has shown that Mr. Cleary failed to explain the drug amount conversions to her, the Court's review of the conversions at the plea hearing cured any such failure, and Ms. Miller has not established the prejudice element for an ineffective assistance of counsel claim related to any such failure.

### 2.       *Criminal History Points*

Ms. Miller states in support of her § 2255 motion that there was a "[discrepancy] with criminal history points." [Filing No. 1 at 4.]

The Government argues in its response that Ms. Miller's argument is waived due to vagueness and that "no discrepancy [with her criminal history points] is evident." [Filing No. 6 at 17-18.] It notes that Ms. Miller stated at the plea hearing that she understood the criminal history points calculation, that Amendment 821 does not impact her criminal history points, and that the Court already incorporated the First Step Act's safety-valve criteria at her sentencing. [Filing No. 6 at 18-19.] It also asserts that Ms. Miller did not suffer any prejudice since her criminal history points were correctly calculated. [Filing No. 6 at 20.]

Ms. Miller does not specify why her criminal history points calculation was incorrect, or how Mr. Cleary's actions led to an error. Her one-sentence argument is undeveloped and is, therefore, waived. *M.G. Skinner & Assocs. Ins. Agency, Inc.*, 845 F.3d at 321.

In any event, Ms. Miller's criminal history calculation was correct. She received one criminal history point for a 2013 conviction for Unlawful Possession with Intent to Deliver Not

13

More than 2,000 Grams but Greater than 500 Grams of Marijuana in Clark County, Illinois, which resulted in 24 months' probation, and one criminal history point for a 2017 conviction for Possession of Drug Paraphernalia and Possession of a Controlled Substance Schedule I Methamphetamine, which resulted in a 60 month suspended sentence. [Filing No. 71 in the Criminal Case at 13-14.] Both criminal history points were properly assessed under U.S.S.G. § 4A1.1(a)-(c) (providing that one criminal history point is added for any prior sentence not exceeding one year and one month (for which 3 points are added) or at least sixty days (for which 2 points are added)).

Further, during the plea hearing the Court went over the criminal history calculation with Ms. Miller, including the fact that the prior convictions resulted in two criminal history points. [Filing No. 142 in the Criminal Case at 18-19.] Ms. Miller stated that she understood her criminal history score calculation. [Filing No. 142 in the Criminal Case at 18-19.] The Court finds Ms. Miller's acknowledgement regarding the accuracy of her criminal history score calculation significant. *See Stewart*, 198 F.3d at 987 ("[S]tatements made to a federal judge in open court are not trifles that defendants may elect to disregard.").

Ms. Miller has not shown that any acts or omissions by Mr. Cleary resulted in an incorrect criminal history calculation because that calculation was, in fact, correct.[1] And because her criminal history score calculation was correct, she cannot show any prejudice. She is not entitled to relief related to her criminal history calculation.

---

[1] Ms. Miller does not raise arguments related to Amendment 821 or the First Step Act, but those arguments would be meritless in any event. First, Amendment 821 would only affect Ms. Miller's sentence if she were a "status points" recipient or a zero-point offender. U.S.S.G. § 4A1.1(e). She is neither. [*See* Filing No. 71 in the Criminal Case at 13-15.] Second, the Court already considered and incorporated changes implemented by the First Step Act, which took effect the day after Ms. Miller's sentencing. [*See* Filing No. 142 in the Criminal Case at 17-18, 35-36, 51.]

In sum, Ms. Miller has not shown that Mr. Cleary provided ineffective assistance of counsel related to her alleged misunderstanding of the drug amount conversions or the calculation of her criminal history points.

### B.       Drug Quantity Calculation Errors

Ms. Miller also appears to directly challenge the Court's drug quantity calculation in her § 2255 motion, arguing that "all [methamphetamine] is a mixture not pure," and that "[t]he conversion is not correct [and] the amounts of drugs [she was] held responsible for is [incredible] and unbelievable."  [Filing No. 1 at 5.]

In its response, the Government argues that Ms. Miller waived her right to contest the drug quantity in her Plea Agreement, that she cannot raise an argument regarding a deviation from the Sentencing Guidelines through a § 2255 motion, that she has procedurally defaulted this claim because she did not raise it in this Court or on appeal and cannot show actual innocence or cause and prejudice, and that the drug quantity calculation was correct in any event.  [Filing No. 6 at 20-27.]

Ms. Miller's argument regarding the drug quantity calculation fails for multiple reasons. First, Ms. Miller did not raise this issue with this Court or on appeal, and may not raise it for the first time in a § 2255 motion. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) ("A claim cannot be raised for the first time in a § 2255 motion" and is procedurally defaulted "if it could have been raised at trial or on direct appeal.").  Defaulted claims cannot be brought on collateral attack through a § 2255 motion unless a petitioner "shows both cause and prejudice for the default," or that she is "actually innocent." *Id.* (quotation and citations omitted).  Ms. Miller has made no effort to show that any of those circumstances are present.  Second, in her Plea Agreement Ms. Miller gave up the right to contest her conviction or sentence for reasons other than ineffective

15

assistance of counsel or retroactive Sentencing Guidelines reductions, or through a motion for compassionate release. [*See* Filing No. 60 in the Criminal Case at 15-16.] Because she does not argue that any errors in her drug quantity calculations resulted from ineffective assistance, she has waived the claim. Finally, and in any event, the drug quantity calculation was correct and Ms. Miller has not provided any specific argument showing otherwise. The PSR – which Ms. Miller stated at the plea hearing that she understood and agreed with – set forth the amounts of actual methamphetamine, methamphetamine mixture, marijuana, and psilocybin, properly converted the amounts in grams to kilograms, and totaled the amounts. [Filing No. 71 in the Criminal Case at 7.] This total correctly resulted in a base offense level of 38. *See* U.S.S.G. 2D1.1(c)(1).

Ms. Miller cannot raise an issue with her drug quantity calculation for the first time in her § 2255 motion, she forfeited the right to make such an argument in her Plea Agreement, and she has not shown that the Court's drug amount calculation was somehow incorrect in any event. She is not entitled to relief on that basis.

**IV.**
**CONCLUSION**

For the reasons explained in this Order, Ms. Miller is not entitled to relief on her § 2255 motion. She did not receive ineffective assistance of counsel in connection with any of the grounds that she raises and her argument challenging the Court's drug quantity calculation is meritless. Moreover, Ms. Miller's factual claims would not warrant relief, or they lack sufficient detail to warrant holding an evidentiary hearing to resolve them.

Accordingly, Ms. Miller's motion for relief pursuant to § 2255, [1], is **DENIED** and this action is **DISMISSED WITH PREJUDICE**. Judgment consistent with this Order shall now issue and the Clerk shall docket a copy of this Order in the Criminal Case (2:23-cr-00004-JMS-CMM-1). The Motion to Vacate, [Filing No. 117 in the Criminal Case (2:23-cr-00004-JMS-CMM-1)],

shall also be **TERMINATED** in the underlying criminal action.  The **CLERK** is also **DIRECTED** to update Ms. Miller's address on the docket to the address listed in the distribution below.

## V.
### DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of her habeas petition.  Rather, she must first request a certificate of appealability.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014).  Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Ms. Miller has failed to show that reasonable jurists would find it "debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  The Court therefore **DENIES** a certificate of appealability.

Date: 4/16/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Kerri Miller
#36537-510
RRM Detroit
Residential Reentry Office
4026 E. Arkona Rd.
Milan, MI 48160